**SO ORDERED.**

**SIGNED this 19th day of March, 2021.**

_____
BENJAMIN A. KAHN
UNITED STATES BANKRUPTCY JUDGE

---

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF NORTH CAROLINA
DURHAM DIVISION

In re:                          )
                                )
Mark David Tibbens,             )          Case No. 19-80964
                                )
            Debtor.             )          Chapter 11

**MEMORANDUM OPINION REGARDING ORDERS:**
**(1) GRANTING MOTION TO CONVERT; AND (2) DENYING MOTION TO**
**EXTEND THE DEADLINES UNDER §§ 1188 AND 1189**

This case came before the Court on August 26, 2020, on Debtor Mark David Tibbens' ("Debtor") Motion for Order to Convert a Case Under Chapter 13 to a Case Under Chapter 11 Subchapter V, ECF No. 55 (the "Motion to Convert"), and on September 30, 2020, on Debtor's Motion for Entry of Order Extending Deadlines for Status Conference and Filing of a Plan. ECF No. 90 (the "Motion to Extend Deadlines"). The Court granted the Motion to Convert and denied the Motion to Extend Deadlines, and indicated that it would supplement its orders with this opinion further setting out its

1

findings of fact and conclusions of law. ECF Nos. 76 and 213, respectively. The following, along with the findings on the record, shall constitute the Court's findings of fact and conclusions of law with respect to these orders under Bankruptcy Rule 7052.

## I.    Jurisdiction and Authority

The Court has jurisdiction over these proceedings under 28 U.S.C. 1334(b). Under 28 U.S.C. § 157(a), the United States District Court for the Middle District of North Carolina has referred this case and these proceedings to this Court by its Local Rule 83.11. These are statutorily core proceedings under 28 U.S.C. § 157(b)(1), (b)(2)(A), and (b)(2)(O). The Court has constitutional authority to enter its orders as reflected herein.

## II.  Factual and Procedural Background

The President signed the Small Business Reorganization Act of 2019 (the "SBRA" or the "Act") on August 23, 2019, thereby effectuating its enactment. Pub. L. No. 116-54, 133 Stat. 1079 (2019). The SBRA became effective on February 19, 2020. Id. at § 5. In its central purpose, the SBRA added a new subchapter V to chapter 11 as an elective chapter for small business debtors for whom the existing provisions of chapter 11 were not providing effective relief.

Three months after the President enacted the SBRA, but two months before it became effective, Debtor commenced this case by

2

filing a voluntary petition under chapter 13 on December 29, 2019. ECF No. 1.  On the same day, Debtor filed his first proposed chapter 13 plan (the "First Chapter 13 Plan"). ECF No. 2.  On his Schedules I and J, Debtor listed monthly income of $1,070.94 and $2,020.31 in expenses, exclusive of any plan payment.  ECF No. 1 at 29-32, Schedules I and J, respectively.[1]  The First Chapter 13 Plan proposed: (a) a 36 month plan period[2] with monthly plan payments of $152.00; (b) no priority claims other than $4,500.00 in attorney's fees for Debtor's attorney; (c) no payment to unsecured creditors;  (d) no secured claims; and (e) no contracts or leases to be assumed.  Additionally, in Section 9, the First Chapter 13 Plan provided as follows:

> Real property located at 849 Moose Tracks Trail, Cedar Grove, NC 27231, which is owned solely by debtor, will be sold to Angel Barnes, via private sale for $130,000 free and clear of all liens.  Motion to sell property free and clear of liens via 11 USC 363(b) will be filed within 45 day of voluntary petition filing date. Proceeds from sale minus $35,000 homestead exemption shall be disburse according to priority by Chapter 13 trustee.

ECF No. 2 at 4.[3]

---

[1] Schedule J did not disclose any household income other than Debtor's.

[2] On Form 122C-1, Debtor listed his household of 2, his average household monthly income at $1,070.94, and his annual at $12,851.28.  ECF No. 1, pp. 42-44. Therefore, Form 122C-1 reflected that Debtor income was below the highest median family income in North Carolina for a family of 2 as contemplated by 11 U.S.C. § 1322(d)(1)(B).

[3] The property located at 849 Moose Tracks Trail, Cedar Grove, North Carolina shall be referred to herein as the "Property."

On February 26, 2020, Debtor filed his Motion to Sell Real Property Free and Clear of Liens Pursuant to 11 U.S.C. § 363, 849 Moose Tracks Trail, Cedar Grove, North Carolina (the "Sale Motion"). ECF No. 16. The Sale Motion recited four liens on the Property as follows: (1) a first lien held by Capital Bank and recorded April 9, 2009, for an equity line deed of trust in the amount of $37,615.92; (2) a second lien held by Elizabeth Botts, arising from a judgment docketed on February 20, 2013, in the amount of $35,010.50; (3) a third lien held by Argos Ready Mix, LLC, arising from a judgment docketed on February 20, 2019, in the amount of $46,188.92; and (4) a fourth lien held by Merchants National Bonding Co. ("Merchants") and recorded June 12, 2019, for a collateral mortgage deed of trust in the amount of $567,917.98. Id. ¶ 4. The Sale Motion proposed to sell the Property to Angel Barnes, but it did not provide any information about the proposed purchaser other than her name. The Court set a March 26, 2020 hearing on the Sale Motion. ECF No. 17.

On February 28, 2020, the Richard M. Hutson, II, as standing chapter 13 trustee (the "Trustee"), filed an objection to confirmation of the First Chapter 13 Plan. ECF No. 20. The Trustee objected to confirmation because: (1) the Sale Motion was not filed within the time proposed under the First Chapter 13 Plan; (2) the First Chapter 13 Plan was not feasible under 11 U.S.C. § 1325(a)(6) due to Debtor's income; and (3) Debtor failed to

4

demonstrate that the First Chapter 13 Plan was properly served on creditors despite receiving a notice of deficiency of service from the Office of the Clerk on December 30, 2019 [ECF No. 8].

On March 6, 2020, Debtor filed Amended Schedules I and J, listing monthly income of $2,070.94 and expenses of $1,920.31, but still not disclosing household income beyond his own.  ECF No. 23.

On March 17, 2020, Elizabeth Botts filed a response to the Sale Motion.  ECF No. 25.  In her response, Botts asserted a second lien against the Property in the amount of $45,737.99, with interest continuing to accrue thereon at the daily rate of $7.09.  Id. ¶ 2.  Botts further asserted that the tax value of the Property was $146,169.00, which exceeded the purchase price by $16,169.00.  Id. ¶ 3.  Nevertheless, to the extent that the sale would pay her in full, she would not object.  Id. ¶ 5.

The Sale Motion came on for hearing on March 26, 2020.  ECF No. 28.  Immediately prior to the hearing, Debtor filed a proposed Exhibit, which was an email from the proposed buyer Angel Barnes, purporting to explain how she came to her offer of $130,000.00.  ECF No. 27.  The proposed Exhibit did not disclose any relationship between the Debtor and the proposed buyer.

At the March 26 hearing, counsel for Botts and Merchants appeared.  The Court questioned counsel for Debtor about the discrepancy between the proposed sale price and the tax value of the Property, and counsel responded that the bank had not yet

performed an appraisal and referred the Court to the proposed exhibit from Barnes. Merchants, however, maintained its objection based on the proposed sale price. In response to a question from the Court about the proposed terms of the Debtor's plan, Debtor's counsel for the first time, "for full disclosure," disclosed that the proposed buyer is the "romantic partner" of Debtor, that she would be obtaining a loan to purchase the Property free and clear of loans, and that Debtor would be making a "minimum plan payment" after the sale. ECF No. 28, 5:10. This "full disclosure" came as a surprise to the Court and Merchants. Id. at 5:45. The disclosure changed Merchants' "evaluation of whether the valuation of the property was objective and accurate," and, as a result, Merchants asked for an opportunity to appraise the property. Id. The Court agreed, stating that the fact that the proposed transaction is not an arms' length transaction is a significant factor. Id. at 6:35. The Court continued the matter, stating, "At a minimum, sir, your motion needs to be amended to correctly identify the purchaser." Id. at 7:55. Debtor's counsel stated that he would amend the Sale Motion to disclose the relationship. Id.

Merchants thereafter filed an objection to both the Sale Motion and to confirmation of the plan. ECF Nos. 29 and 30. In its objection to the Sale Motion, Merchants objected because Debtor had failed to disclose his relationship with the buyer and asserted that the Sale Motion was not proposed in good faith. ECF No. 29

¶¶ 13-17.  Merchants raised similar objections to the First Chapter 13 Plan.  ECF No. 30 ¶¶ 13-17.

On April 9, 2020, the Court conducted a confirmation hearing on the First Chapter 13 Plan.  ECF No. 31.  At the confirmation hearing, Debtor's attorney agreed that the sole purpose of the chapter 13 case was to sell the Property to the Debtor's romantic partner without payment to any creditor other than attorney's fees. Id. at 1:00 and 4:20.  Debtor argued that the purpose of the filing was to permit his romantic partner to purchase the house for its true value and free of any liens so that Debtor could remain in the house with her.  Id. at 6:40.  The Court expressed serious doubt whether this constituted a proper purpose for chapter 13. Furthermore, and despite the Court's prior direction, Debtor had not amended the Sale Motion to disclose the relationship with the buyer.  Id. at 1:50.  Debtor's attorney stated that he was waiting on the results of the appraisal to amend the Sale Motion.  Id. at 3:20.  The Court denied confirmation of the First Chapter 13 Plan because the language of Section 9 was patently unconfirmable, regardless of the proper purpose of the filing.  ECF No. 32.  In denying confirmation, the Court did not provide additional time for Debtor to file another plan.

Almost two months later, on June 4, 2020, Debtor filed his First Amended Motion to Sell Real Property Free and Clear of Liens Pursuant to 11 U.S.C. § 363 849 Moose Tracks Tail [sic], Cedar

Grove, North Carolina (the "Amended Sale Motion"). ECF No. 34.
The Amended Sale Motion states, "Angel Barnes is an insider to
this transaction, in that she is the romantic partner of the debtor
and lives with the debtor on the real property at issue in this
motion." Id. ¶ 9.

A month later, on July 6, 2020, Debtor filed Amended Schedule
J to remove any expenses for a mortgage or real property taxes.
ECF No. 43. The next day, Debtor filed his Amended Notice to
Creditors and Proposed Plan (the "Second Chapter 13 Plan"). ECF
No. 44. The Second Chapter 13 Plan proposed: (1) 44 monthly plan
payments of $757.94; (2) payment of a $907.81 priority claim of
the North Carolina Department of Revenue; (3) payment of $4,500 in
attorney's fees to Debtor's counsel; and (4) $25,106.79 pro rata
distribution to nonpriority unsecured claims. Id. Additionally,
Section 9 contained the following nonstandard provision:

> Real property located at 849 Moose Tracks Trail, Cedar
> Grove, NC 27231, which is owned solely by debtor, will
> be sold to Angel Barnes, an insider, via private sale
> free and clear of all liens. Proceeds of the sale will
> be distributed to the secured creditors by priority at
> closing by closing attorney.

Id.

One day later, the Trustee filed his motion to dismiss the
case due to the Debtor exceeding the debt limitations under 11
U.S.C. § 109(e). ECF No. 45. On July 14, 2020, Debtor withdrew
the Amended Sale Motion, and on July 21, filed the Motion to

Convert the case to a case under chapter 11. ECF Nos. 52, 55. In the Motion to Convert, Debtor indicated his intention to elect to proceed under subchapter V if the case were converted. ECF No. 55. On July 28, 2020, the Bankruptcy Administrator joined in the Trustee's motion to dismiss. ECF No. 62.

The Court conducted a joint hearing on the Trustee's motion to dismiss and Debtor's Motion to Convert on August 26, 2020. At the hearing, Debtor conceded that he had continuing inaccuracies in his schedules, including his recently filed amended schedules, and testified inconsistently regarding his intentions and ability to sell the Property as proposed. ECF No. 74. The Bankruptcy Administrator argued that Debtor's failure to disclose and schedule amendments "could charitably be called confusion" and demonstrated a lack of good faith. Id. at 2:52:40-2:58:00. The Bankruptcy Administrator further contended that allowing the conversion would be futile because Debtor could not meet the deadlines under §§ 1188 and 1189 and could not fund a chapter 11 plan. Id. The Bankruptcy Administrator pointed out that the case had been pending for 6 months after the effective date of subchapter V, and suggested that the case be dismissed, the schedules get corrected, and the case be refiled with correct schedules to get a "clean case." Id. at 2:58.

### III. Discussion

### A.    <u>The Motion to Convert</u>

The record did not establish that Debtor would be unable to confirm any chapter 11 plan. Chapter 13 and chapter 11 address the filing of the petition with subjective bad faith in different manners. To confirm a plan in a case under chapter 13, the court must find that "the action of the debtor in filing the petition was in good faith." 11 U.S.C. § 1325(a)(7). Section 1129 has no similar provision.[4] Instead, chapter 11 deals with bad faith filings through § 1112, which, in the Fourth Circuit, requires both that the petition be filed with subjective bad faith and that any plan for reorganization be objectively futile. <u>See</u> <u>Carolin</u> <u>Corp. v. Miller</u>, 886 F.2d 693 (4th Cir. 1989).

In order to determine that conversion would be futile under <u>Carolin</u>, the Court not only must find that the petition was filed with subjective bad faith, but it also must determine that any attempt at reorganization under chapter 11 would be objectively futile. <u>Id.</u> at 700-01. It is this second requirement on which the record was insufficient to prevent the conversion because the

---

[4] Section 1129(a)(3) requires the court to find that "the plan has been proposed in good faith . . .." Section 1325(a)(3) is identical. Section 1129(a), however, does not contain a corollary to § 1325(a)(7). <u>See</u> 7 <u>Collier on Bankruptcy</u> ("<u>Collier</u>") ¶ 1129.02[3][a][i] n. 25 (and accompanying text) (16th ed. 2020).

record at the hearing did not conclusively establish that Debtor could not propose a confirmable plan under chapter 11.

The Court explained several reasons why it could not conclude that a chapter 11 plan would be objectively futile on the existing record.   First, Debtor had not yet elected application of subchapter V.   Fewer than 300 days had passed since the petition date, and Debtor therefore could file a timely plan if the case were converted and Debtor did not elect to proceed under subchapter V.   See 11 U.S.C. § 1121(e)(2).   In any event, even if the Debtor were to elect to proceed under subchapter V, the failure to meet the deadlines under §§ 1188 and 1189 would not necessarily be fatal to the chapter 11 case or Debtor's ability to confirm a chapter 11 plan.

### 1.   The deadline to conduct a status conference under § 1188

Section 1188(a) provides that "not later than 60 days after the entry of the order for relief under this chapter, the court shall hold a status conference . . .," and § 1188(b) allows the court to extend this deadline only if the need for an extension "is attributable to circumstances for which the debtor should not justly be held accountable."   11 U.S.C. § 1188(a) and (b).   The deadline to conduct the status conference, therefore, is a deadline for the court, rather than for the debtor.   Subchapter V does not contain any consequence for the court's failure to timely conduct the status conference.   Although § 1188(c) requires the debtor to

11

file a report detailing the efforts the debtor has undertaken and will undertake to attain a consensual plan not later than 14 days before the date of the status conference, this reporting deadline is tied to the date of the status conference. Therefore, a debtor's report is not late until the status conference has been set and the debtor fails to file its report at least 14 days prior to the conference. See In re Wetter, 620 B.R. 243, 252 (Bankr. W.D. Va. Oct. 14, 2020) (failure to hold status conference within 60 days is a deadline for the court, rather than the debtor, and debtor did not fail to timely file the § 1188(c) report timely when no status conference had been set).

**2. The deadline to file a plan under § 1189(b)**

At least one court has concluded that the failure to timely file a plan under § 1189(b) is fatal to confirmation. See In re Seven Stars on the Hudson Corp., 618 B.R. 333, 343-44 (Bankr. S.D. Fla. Aug. 7, 2020) ("failure to meet these statutory deadlines would also render Seven Stars not in compliance with Sections 1129(a)(1) (a plan must comply with the applicable provisions of the Bankruptcy Code) and 1129(a)(2) (the plan proponent — here the debtor — must comply with the applicable provisions of the Bankruptcy Code)").[5] This Court respectfully disagrees.

---

[5] In small business cases, at least one other court has determined that the failure to timely file a plan under § 1121(e)(2) prevents confirmation. In re Star Ambulance Service, LLC, 540 B.R. 251 (Bankr. S.D. Tex. 2015) (45 days after filing of the plan in a small business case, the plan no longer is eligible for confirmation because it cannot comply with 1129(a)(1)). Nevertheless, even in

Although the failure to timely file a plan constitutes cause for dismissal under § 1112(b)(4)(J), nothing in the Bankruptcy Code suggests that this failure alone is fatal to confirmation. In fact, the applicable statutes demonstrate otherwise. First, even if there is cause to dismiss or convert the case, the case will not be dismissed or converted unless a party in interest moves to dismiss under § 1112(b)(1), or the court raises the issue sua sponte under §§ 105(a) and 1112(b)(1). Even when the issue is joined and cause exists, § 1112(b)(2) prohibits the court from converting or dismissing the case under certain circumstances.[6]

a small business case, missing such deadlines is not necessarily fatal. See In re Crossroads Ford, Inc., 453 B.R. 764, 769 (Bankr. D. Neb. 2011) (nothing in §§ 1129 or 1121 prohibits small business debtors from filing more than one plan, and the failure to confirm a plan within 45 days of its filing therefore does not require dismissal under § 1112 or prevent confirmation under 1129). Cf. In re Simbaki, Ltd., 522 B.R. 917, 920-21 (Bankr. S.D. Tex. 2014) (holding that 1129(e) is a deadline on the court, rather than the debtor, and failure to confirm within 45 days of filing does not require dismissal or prevent confirmation, furthermore, the 300-day deadline in 1121(e) for a debtor to file a plan does not apply to non-debtor plans, which may be confirmed despite being filed after 300-day deadline). It should be noted, however, that the 300-day deadline for the debtor to file a plan under 1121(e)(2) in small business cases, unlike the 45-day deadline for confirmation under 1129(e), is a deadline on the debtor rather than the court, as is the 90 day deadline in § 1189(b).

[6] Section 1112(b)(2) provides:

> The court may not convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter if the court finds and specifically identifies unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate, and the debtor or any other party in interest establishes that—
>
> (A) there is a reasonable likelihood that a plan will be confirmed within the timeframes established in sections 1121(e) and 1129(e) of this title, or if such sections do not apply, within a reasonable period of time; and
>
> (B) the grounds for converting or dismissing the case include an act or omission of the debtor other than under paragraph (4)(A)-

13

The prohibition against converting or dismissing a case for cause under § 1112(b)(2) cannot be reconciled with the conclusion that the failure to timely file a plan in a subchapter V case, standing alone, is fatal to confirmation of the plan.  There are key differences between the provisions for small business cases under §§ 1121(e), 1189, and 1112.  The 300-day deadline in small business cases under § 1121(e) is unforgiving to a debtor if missed because § 1112(b)(2)(A) specifically imposes compliance with that deadline as a pre-condition to the safe harbor it provides.  Under that section, the court may not convert or dismiss the case if the debtor, among other things, can demonstrate a reasonable likelihood that it will confirm a plan "within the time frames established in sections 1121(e) and 1129(e)."  11 U.S.C. § 1126(a)(2)(A).  Several courts have found that this unforgiving requirement "reflect[s] 'Congressional intent that plan filing time limits be strictly followed.'"  See In re Castle Horizon Real Estate, LLC, No. 09-05992-8-JRL, 2010 WL 3636160, at *2 (Bankr. E.D.N.C. Sept. 10, 2010) (observing that these timing requirements "are a 'clear example of Congress' attempt to keep small business cases on a short leash.'")(quoting In re Win Trucking, Inc., 236

---

(i) for which there exists a reasonable justification for the act or omission; and

(ii) that will be cured within a reasonable period of time fixed by the court.

No party in interest moved to dismiss or convert this case under § 1112(b)(1).

B.R. 774, 778 (Bankr. D. Utah 1999) and In re Sanchez, 429 B.R. 393, 398 (Bankr. D. P.R. 2010)).  These deadlines, however, are not so unforgiving in a subchapter V case, and the distinctions among 11 U.S.C. §§ 1112(b)(2), 1121(e), 1181(a), and 1189(b) indicate Congress' intent not to have a late filed plan doom a subchapter V case.

Unlike a small business case, §§ 1121(e) and 1129(e) do not apply in subchapter V.  See 11 U.S.C. § 1181(a).  Therefore, the safe harbor provision in § 1112(b)(2) prohibits the court from dismissing or converting the case if the debtor can establish, among other things, that it is reasonably likely that a plan will be confirmed within a reasonable time.  Notably, even if a debtor is able to demonstrate a likelihood of prompt confirmation, Congress limited the protection of the safe harbor solely to those instances where the extant cause for dismissal or conversion is a continuing loss or diminution of the estate and the absence of a reasonable likelihood of rehabilitation.  See § 1112(b)(2)(B) (in order to fall within the safe harbor, the cause for dismissal must be cause other than that under § 1112(b)(4)(A)).  Congress did not, however, similarly limit this prohibition against dismissal or conversion where the cause is failure to timely file a plan under § 1112(b)(4)(J).[7]

---

[7] It cannot circularly be argued that Congress did not similarly need to exclude § 1112(b)(4)(J) because a debtor cannot demonstrate the likelihood of confirmation when the untimeliness of the plan prohibits confirmation under

Not only does the prohibition against dismissal or conversion under the safe harbor in § 1112(b)(2) demonstrate that a failure to comply with these deadlines should not by itself be fatal to confirmation, but the legislative history and cases interpreting § 1129(a)(1) and (a)(2) further indicate that these types of failures are not fatal to plan confirmation. Section 1129(a)(1) focuses on the contents of the plan. As observed by the Second Circuit:

> [T]he legislative history of subsection 1129(a)(1) suggests that Congress intended the phrase "applicable provisions" in this subsection to mean provisions of Chapter 11 that concern the form and content of reorganization plans: "Paragraph (1) [of subsection 1129(a)] requires that the plan comply with the applicable provisions of chapter 11, such as section 1122 and 1123, *governing classification and contents of plan.*" S.Rep. No. 95-989, 95th Cong., 2d Sess. 126 (1978), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5912 (emphasis added). It is doubtful that violations of Code provisions unrelated to the form and content of a plan, such as voting procedures, implicate subsection 1129(a)(1) at all.

Kane v. Johns-Manville Corp., 843 F.2d 636, 648-49 (2d Cir. 1988)(distinguished on other grounds); see also In re Multiut Corp., 449 B.R. 323 (Bankr. N.D. Ill. 2011) (citing legislative history and determining that plan complied with (a)(1) where it complied with the classifications requirements under §§ 1122 and

---

§§ 1129(a)(1) and 1129(a)(2). If that were the case, the untimely filing of a plan under § 1121(e)(2) similarly would prohibit refuge in the safe harbor of § 1112(b)(2), and there would have been no reason to include compliance with that deadline as a requirement of the subsection. Similarly, Congress could have added compliance with the time frames under §§ 1188(a) and (c) and 1189(b) to § 1112(b)(2) as it did with §§ 1121(e) and 1129(e), but it did not.

1123); 7 <u>Collier</u> ¶ 1129.02[1] (citing legislative history as basis that this test is for compliance with §§ 1122 and 1123, but noting "[s]ection 1129(a)(1) can also be used as the grounds for denial of confirmation when the plan is contrary to provisions of title 11 not found in chapter 11, such as impermissible releases of third parties, or if the plan selectively rides roughshod over and attempts to nullify important provisions of the Bankruptcy Code. At some level, however, the courts have recognized that the complexity of plan confirmation permits notions of 'harmless error,' so that technical noncompliance with a provision that does not significantly affect creditor rights will not block confirmation."). The failure to timely file the plan standing alone is not within this contemplation. Therefore, the failure to timely file the plan should not per se require denial of confirmation under § 1129(a)(1).

The requirement that a plan proponent comply with the applicable provisions of title 11 under § 1129(a)(2) similarly has been limited. It has been applied to require that the proponent comply with the applicable disclosure and solicitation requirements for confirmation. See e.g., <u>In re Cypresswood Land Partners, I</u>, 409 B.R. 396, 423-24 (Bankr. S.D. Tex. 2009) ("Though this language is broad, the Bankruptcy Court for the Western District of Texas has reasoned that § 1129(a)(2) does not provide creditors with a 'silver bullet' to defeat confirmation based on

17

each and every minor infraction of Title 11 that a debtor may commit[.] . . . Bankruptcy courts limit their inquiry under § 1129(a)(2) to ensuring that the plan proponent has complied with the solicitation and disclosure requirements of § 1125." (citations omitted)). Moreover, as discussed above, if the failure to timely file a plan were fatal to the case, Congress would have excepted § 1112(b)(4)(J) from the prohibition against conversion or dismissal under § 1112(b)(2) as it did with § 1112(b)(4)(A), or alternatively, would have imposed compliance with the deadline under § 1189(b) as a precondition as it did with §§ 1121(e) and 1129(e). It did neither. Therefore, the Court concludes that Debtor's failure to timely file the plan, standing alone, is insufficient to prohibit confirmation under §§ 1129(a)(1) or 1129(a)(2). For these reasons, the Motion to Convert was granted.

**B.**    **The Motion to Extend the Deadlines Under §§ 1188 and 1189**

The Court entered its Order Granting the Motion to Convert on September 3, 2020. ECF No. 76. Consistent with the Court's oral ruling, the Order stated, "The Court does not find the Debtor's conduct in this case to evidence a lack of good faith such that the Debtor's Motion to Convert should be denied." Id. ¶ 4.[8]    On

---

[8] Despite granting the Motion to Convert, the Court noted its "great concern" with the way the case had progressed, including the failure to disclose in the sale process, numerous errors in Debtor's schedules that persisted even at the time of the hearing on the motion to convert, inconsistent testimony, and the failure to pay post-petition taxes. The Court noted that Debtor's conduct during the case and after conversion would be relevant in considering any motion to dismiss under § 1112(b)(1) and confirmation of a plan under § 1129(a)(3),

September 8, 2020, Debtor amended his petition to designate as a small business debtor and elected to proceed under subchapter V.[9] ECF No. 87.  On that same day, Debtor filed his motion to extend the time within which to conduct the status conference under § 1188, and to file his plan under § 1189.  ECF No. 90.

Section 1188(a) requires the court to hold a status conference not later than 60 days after the entry of the order for relief "to further the expeditious and economical resolution of a case under" subchapter V.  11 U.S.C. § 1188(a).  The court may extend the 60 day period "if the need for an extension is attributable to circumstances for which the debtor should not justly be held accountable."  Id. at (b).  Not later than 14 days before the status conference scheduled by the court, a debtor in a case under subchapter V must file a report "that details the efforts the debtor has undertaken and will undertake to attain a consensual plan of reorganization."  Id. at (c).  Similarly, § 1189(b) requires the debtor to file a plan "not later than 90 days after the order for relief under this chapter, except that the court may

---

but that it could not conclude on the record before it that confirmation was futile.

[9] No party in interest has objected to Debtor's designation or alleged that the amendment to the petition itself was made in bad faith or has caused prejudice. See In re Body Transit, Inc., 613 B.R. 400, 408-09 (Bankr. E.D. Pa. 2020) (determining that an amendment to the petition to elect to proceed under subchapter V may be disallowed if the amendment is made in bad faith or would unduly prejudice a party).  Therefore, this Court was not required to determine if such a limitation applied for purposes of conversion.

extend the period if the need for the extension is attributable to circumstances for which the debtor should not justly be held accountable."

Although conversion of the case to chapter 11 constituted an order for relief under chapter 11, it is not construed to change the date of the order for relief for purposes of §§ 1188 and 1189. See In re Trepetin, 617 B.R. 841, 845-46 (Bankr. D. Md. 2020) (noting that "the Court must implement the Code as written and cannot ignore the mandate of section 348(a) and the omission of any Subchapter V deadlines from section 348(b)."). Therefore, the deadlines in each of these sections would need to be extended for the status conference to be timely held and for Debtor to timely file his plan, both of which periods had expired before the conversion date.

A court may extend the deadlines in §§ 1188 and 1189 even after the periods have lapsed. Congress knows how to limit the courts' authority to extend deadlines after their expiration and it did not do so here. See e.g., 11 U.S.C. § 365(d)(4)(B) (the court may extend the time to assume or reject an unexpired lease of nonresidential real estate if it does so "prior to the expiration" of the existing period); 11 U.S.C. § 521(a)(2)(A) and (B) (requiring debtor to file a statement of intention prior to the meeting of creditors and to perform such intention within 30 days after the first date set for the meeting of creditors, "or

within such additional time as the court, for cause, <u>within such</u> <u>period</u> fixes." (emphasis added)); <u>see also</u> <u>Trepetin</u>, 617 B.R. at 847, n. 9; <u>In re Progressive Solutions, Inc.</u>, 615 B.R. 894, 899 (Bankr. C.D. Cal. 2020) ("[T]here are no bases in law or rules to prohibit a resetting or rescheduling of these procedural matters").

Although this Court may extend these periods despite their prior expiration, it only may do so if the need for the extensions is due to circumstances for which the debtor should not justly be held accountable. 11 U.S.C. §§ 1188(b) and 1189(b). The court in <u>Trepetin</u> observed that the language used in §§ 1188(b) and 1189(b) is identical to the language in § 1221 requiring the debtor to file a plan within 90 days of the order for relief in a case under chapter 12, and concluded that the same standard should apply in a subchapter V case. <u>Trepetin</u>, 617 B.R. at 848-49. This Court agrees.

Courts considering whether to grant an extension under the identical language in chapter 12 have required debtors requesting such an extension to demonstrate "'that the debtor's inability to file a plan is due to circumstances [] beyond the debtor's control.'" <u>Id.</u> (internal citations and quotations omitted). The courts have applied this same standard in cases under subchapter V with varying degrees of stricture. In <u>Trepetin</u>, the debtor filed a voluntary petition under chapter 7 nine days prior to the

effective date of the SBRA, but did not move to convert his case until June 11, 2020. Id. at 843. Despite having had the opportunity to seek conversion to chapter 11 and election to proceed under subchapter V within the time periods contemplated by §§ 1188 and 1189, the court permitted an extension of time within which the debtor could file his plan, finding that the debtor made the election promptly after conversion, and had proceeded during the chapter 7 case without engaging in any "wrongful or dilatory conduct." Id. at 849. The court cautioned that it could "envision a case in which the circumstances surrounding conversion could weigh against any extension," but observed that no party opposed the relief or challenged the debtor's justification based on the timing of conversion. Id. at 849-50.

In contrast, the court in Seven Stars, refused to grant an extension of the deadlines. 618 B.R. at 345. Disagreeing with Trepetin, the court in Seven Stars concluded that the debtor's voluntary elections both to file chapter 7 and to convert to chapter 11 were not due to circumstances beyond the debtor's control. Id. at 345-46 (choosing to amend after the statutory deadlines is not beyond the debtor's control). See also In re Wetter, 620 B.R. 243, 253 (Bankr. W.D. Va. 2020) (determining that Seven Stars sets "too rigid" of a test, and concluding that Trepetin "charts a better path"); In re Northwest Child Devel. Centers, Inc., Case No. 20-50632, 2020 WL 8813586, *3 (Bankr.

M.D.N.C. Dec. 8, 2020) (observing the differing standards applied by the courts, denying motion to extend the deadline for filing a plan under § 1189(b), and determining that, regardless of the standard employed, the debtor failed to carry its burden in establishing that the need for an extension of the deadline was attributable to circumstances beyond the debtor's control where the debtor's evidence offered no factual nexus between the failure to timely file the plan and the circumstances averred).

In this case, as in Northwest Child, under either standard, Debtor failed to carry his burden that the need for an extension was due to circumstances for which he should not justly be held accountable. Numerous delays occurred in the administration of the chapter 13 case that were fully within Debtor's control and for which he should be held accountable. Debtor filed two chapter 13 plans, one of which was filed prior to the effective date of the SBRA, but was facially unconfirmable. Debtor failed to comply with his own proposed deadline to file the contemplated motion to sell his real property as provided in his First Chapter 13 Plan without offering any basis for the failure, and, when filed, the Sale Motion failed to disclose his relationship with the buyer. Upon learning of this relationship, the Court directed Debtor to amend the Sale Motion to disclose the relationship, with which directive he did not timely or promptly comply. Debtor took three months to file the Second Chapter 13 Plan after denial of

confirmation.  Thereafter, Debtor did not seek a conversion of the case until five months after the effective date of the SBRA, and only after having confirmation denied in the chapter 13, delaying for three months in filing an amended plan, failing to timely and promptly comply with the directives of the Court, failing to correct deficiencies in his schedules, including disclosure of household income, despite the objections of the Bankruptcy Administrator, and testifying inconsistently.  These circumstances and the delays caused by his actions were within his control and constitute circumstances for which he justly should be held accountable.  Therefore, the Court found that Debtor failed to carry his burden under § 1189(b), and the motion to extend time was denied.

[END OF DOCUMENT]

**Parties to be Served**

All parties and creditors of record shall be served by the
Bankruptcy Noticing Center.